UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)　　　　Case No. 2:25-cr-00040-mkl
　　　　　　　　　　　　　　　　　)
TODD HOYTE,　　　　　　　　　　　)
　　　　Defendant　　　　　　　　　)

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

NOW COMES the Defendant Todd Hoyte, through counsel, and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) and the First Amendment to the United States Constitution, moves this Court to dismiss the Indictment. The Indictment must be dismissed because the statutes at issue in this case, as applied to Mr. Hoyte, are unconstitutional because they violate his First Amendment right to freedom of speech. The Indictment must also be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) because it fails to state an essential element of the alleged offenses in Counts One and Two.

**FACTUAL BACKGROUND**

On November 8, 2022, Mr. Hoyte was charged with a crime in Vermont State Court, Grand Isle Unit. *State v. Hoyte*, Case No. 22-CR-10449.  On March 22, 2023, Mr. Hoyte was charged with another crime in Vermont State Court, Grand Isle Unit. *State v. Hoyte*, Case No. 23-CR-2730. The assigned prosecutor was Victim-1 in the present case. On June 20, 2024, Mr. Hoyte's attorney withdrew from his case and Mr. Hoyte began representing himself. *State v. Hoyte*, Case Nos. 22-CR-10449, 23-CR-2730, dkt entries on June 20, 2024.

Between July 16, 2024, and September 29, 2024, Mr. Hoyte left fourteen voicemails for Victim-1. *See* Exs. A-N (transcript of voicemail recordings).

1

During his first call Mr. Hoyte stated that he was calling to try to move his state criminal case forward:

> I'm representing myself now, so you can call me and deal with me, my friend. Okay? So we got a deposition to plan . . . I'm not accepting any dismissal from your office, so you can tuck that one up your a**. No dismissal. I want to go to trial. I want a trial date. I'm going to beat the cases, then I'm going to see you're a** off for what you've done to me and my wife, to Kaydell.

Ex. A.[1]

In his next call a few weeks later, on July 29, 2024, Mr. Hoyte stated that he was representing himself and had not received a call back. He then said: You're a f****in' punk motherf***er State's attorney, and your days are numbered, mother***er. Peek-a-boo. You're gonna see, mother***er. You're gonna f**k with my life, I'm going f****n' take yours . . ." Ex B.

The next day Mr. Hoyte called again and stated: "Get me a trial date and a lawyer, you f*****n' a**hole, sad-a** bitch." Ex. C. The following day Mr. Hoyte stated: "Oh, boy, it's going to get nasty, real nasty." Ex. D.

On August 6, 2024, Mr. Hoyte left a message stating, *inter alia*, that he had not received a call back and that Victim-1 had made a mistake by maliciously charging him with a crime. Ex. E. Mr. Hoyte stated that "justice is coming" and that he hated Victim-1 "more than Adolf Hitler." *Id.*

On August 7, 2024, Mr. Hoyte stated: "You made an attempt on my life as I see it, so I'm going to return the favor to you. *I'm chasing your job. I want you working at Dunkin' Donuts* in a little skirt like you belong." He further stated that "you're an abomination to the judicial system." (emphasis added). Ex. F (emphasis added).

---

[1] The quoted portions do not include the entirety of the voice mails. The quoted portions only include the portions of each voicemail that are most salient to the issue before the Court. The transcripts, attached as Exhibits A-N, include the entirety of each voicemail.

On August 8, 2024, Mr. Hoyte reiterated that he wanted to take his cases to trial because he was innocent, he wanted Victim-1 removed from his position, and he was unhappy with another prosecutor, A.H. He stated:

> [M]y goal in life, *my mission in life is to make sure that the two of you don't practice law ever again.* So that is my mission in life - - my new mission.

Ex. G (emphasis added).

He left another message later in the day stating that he was filing a complaint against Victim-1 and that he was going to make sure Victim 1 was not a State's Attorney anymore:

> Yes, this is another message for State's Attorney [Victim 1]. I hope you like that title while you got it, because *I'm going to make sure you're not a State's Attorney anymore. I am filing a complaint against you again.* You don't get back to me. I don't have a f*****g lawyer out of your f****d up, corrupt court. What kind of a f*****g joke you think this is? Listen, give me a call. I need to know what I need to do to get a f****n' lawyer so I can rub your f****n' nose in this . . . I'm representing myself now, trying to get a hold of you to find out what I need to do. . . . I have a brain injury, and I'm disabled, and your state has violated my constitutional rights, my human rights, my civil rights. I'm going to start doing some violating of my own, and it's not going to be fun, trust me.

Ex. H (emphasis added).

A few weeks later on September 22, 2024, Mr. Hoyte left a message informing Victim-1 that he requested a public defender. He further stated:

> Your job is f*****g limited, brother. I can't wait. I'm going to have your hide brother, I promise on my dead son's soul. I'm going to have your hide, your career. . . So this isn't a threat; this is a promise. *I am going to get your career. And when you're out raking leaves in a couple of years, when you finally come out of your fucking condo, I'll throw some leaves in your yard for ya.*

Ex. I (emphasis added).

Later that day, he left another message stating that he was going to sue Victim-1 after he beat his cases. Ex. J. He further stated that Victim-1 and another prosecutor, A.H., would be "out

of [their] jobs" and should "start a landscape service called [A.H.] and [Victim 1]." *Id.* He also

told Victim-1: I hope somebody kills you, dude. I hope you get hit by a Mack truck. Okay? That

would make my day." *Id.*

Mr. Hoyte left four final messages over the next few days. *See* Exs. K-N. The messages

criticized Victim-1, expressed Mr. Hoyte's frustration, and informed Victim-1 that his days as a

State's Attorney were limited because Mr. Hoyte was going to get him fired. Of particular

importance, Mr. Hoyte stated:

> And I just wanted to let you know there's no difference between a
> corrupt pig and what you're doing. And you know what happens to
> corrupt pigs, right? They either get fired, killed, or they end up in
> jail. *So I'm aiming at getting you fired*, first of all. *And then
> hopefully, you get some criminal harassment charges for what
> you've been doing to me for the last three years*. And hopefully,
> you'll find your way to a f*****n' jail cell as well. And you need to
> know, mother****r, I am determined on bringing you down. And
> down you're going to go, mother****r. I promise you.

Ex. L (emphasis added). My Hoyte left no further voicemails.

On October 15, 2024, Mr. Hoyte was charged via criminal complaint with violating 18

U.S.C. § 875(c) for allegedly knowingly and willfully transmitting communications containing a

threat to injure in interstate commerce. On April 17, 2025, the grand jury returned a two-count

indictment charging Mr. Hoyte with violating 18 U.S.C. § 2261A(2)(B) and 18 U.S.C. § 875(c).

Count One alleges that Mr. Hoyte:

> Beginning on or about July 29, 2024, and continuing through on or
> about September 25, 2024, in the District of Vermont and elsewhere,
> the defendant, Todd Hoyte, with the intent to harass and intimidate
> another person, used electronic communication services and
> electronic systems of interstate commerce, and other facilities of
> interstate commerce, to engage in a course of conduct that caused,
> attempted to cause, and would be reasonably expected to cause
> substantial emotional distress to that person, to wit, Hoyte engaged
> in a campaign of harassment, intimidation, and threats against
> Victim-1, who worked in Vermont, including by sending harassing,

> threatening, and intimidating voice messages from outside of Vermont to Victim-1's work phone, Victim-1's voicemail box, and the voicemail box of the Vermont Department of Public Safety.

ECF No. 8.

Count Two alleges that on or about July 29, 2024, in the District of Vermont and elsewhere, the defendant, knowingly and willfully transmitted in interstate commerce a communication containing a threat to injure Victim-1. *Id.*

### **LEGAL ARGUMENT**

"There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3rd Cir. 2001) (Alito, J.). The First Amendment "protects a variety of speech that is intended to trouble or annoy, or to make timid or fearful." *United States v. Dennis*, 132 F.4th 214, 228 (2d Cir. 2025) (internal citation omitted). Conduct does not lose First Amendment protection merely because the actor intends to annoy the recipient. *Norwell v. Cincinnati*, 414 U.S. 14, 14-16 (1973). The First Amendment prohibits restrictions on speech except a few "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky v. N.H.*, 315 U.S. 568, 571-72 (1942). These categories include, as relevant here, "true threats." *United States v. Alvarez*, 567 U.S. 709, 717 (2012).

The indictment should be dismissed because it is unconstitutional to apply the statutes at issue to Mr. Hoyte's speech. First, Mr. Hoyte did not communicate a true threat and, therefore, it is unconstitutional to apply 18 U.S.C. § 2261A(2)(B) and 18 U.S.C. § 875(c) to his speech in this case. Second, to the extent the Court disagrees, Mr. Hoyte did not communicate two or more true threats and, therefore, Count One should be dismissed as it is unconstitutional to apply 18 U.S.C. § 2261A(2)(B) to his speech.

The Court has the authority to decide, as a matter of law, whether a communication, on its face, constitutes a true threat. *See Watts v. United States*, 394 U.S. 705 (1969). The Supreme Court has held, as a matter of law, that a defendant's statements were political hyperbole and were not true threats. *Watts*, 394 U.S. 705; *cf. United States v. Malik*, 16 F.3d 45, 50-51 (2d Cir. 1994) (noting, when analyzing sufficiency of the evidence, that whether a communication is true threat is usually left to the jury).

Counts One and Two should also be dismissed because each count alleged in the indictment fails to state a claim. Both counts fail to allege Mr. Hoyte's *mens rea* with respect to the threat.

1. **The Statutes at Issue in This Case, 18 U.S.C. § 2216A(2)(B) and 18 U.S.C. § 875(c), as Applied to Mr. Hoyte, Are Unconstitutional Because They Violate His First Amendment Rights.**

Mr. Hoyte did not communicate a "true threat" and, therefore, the application of the statutes at issue to him violates his First Amendment right to freedom of speech. *Dennis*, 132 F.4th at 228; *Virginia v. Black*, 538 U.S. 343, 359 (2003) (discussing bounds of First Amendment protections and noting that the First Amendment permits banning a true threat). True threats are defined narrowly as "serious expressions conveying that a speaker intends to commit an act of unlawful violence." *Counterman v. Colo.*, 600 U.S. 66, 74 (2023) (internal citation and alterations omitted). "The 'true' in that term distinguishes [serious threats of violence] from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow . . ." *Id.* (internal citation omitted).

The defendant must have (1) defendant acted with the requisite state of mind, and (2) "communicate[d] a true threat." *See Dennis,* 132 F.4th at 228-230 (discussing import of true threat requirement into *mens rea* and causation); *see also United States v. Garnes*, 102 F.4th 628,

636-38 (2d Cir. 2024) (discussing First Amendment subjective and objective requirements).[2] The latter determination "is made objectively, by asking whether an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury." *Dennis*, 132 F.4th at 229 (internal citation omitted).

If statements are ambiguous, the Court should consider statements "in context to determine whether it implicitly conveyed a true threat." *Id.* at 230. For example, in *Dennis*, the Second Circuit held that there was sufficient evidence for a reasonable jury to find that the defendant communicated, and intended to communicate, a true threat. *Id.* at 230-31. It reasoned that ambiguous statements like "u r going to get yours" and "[u] need to pay the most" could be deemed threats when they were considered in combination with references to deadly scriptural retribution, references to mass shooting, and a statement that "[d]uring this biblical moment, God is going to test [victim's children's school] like it has never been tested before [because] people will be dying daily for the next year and the [victim's children's school name] is going to watch it daily along with me." *Id.* at 231. Similarly, messages sent to the families of some of the victims of the mass shooting at Marjory Stoneman Douglas High School, stating things like: "[w]ith the power of my AR-15, you all die" and "I'm your abductor, I'm kidnapping you fool" were true threats not afforded protection under the First Amendment. *United States v. Fleury*, 20 F.4th 1353, 1365-66 (11th Cir. 2021).

In contrast here, the entirety of the communications, "the context," makes clear that Mr. Hoyte did not communicate a true threat. Instead, he was a pro se litigant who was unhappy with the decisions of the prosecuting attorney, wanted to figure out how to resolve his case, and wanted the prosecutor to be fired. He was not threatening physical violence, he was threatening

---

[2] Mr. Hoyte moves to dismiss the indictment based on the second basis. In other words, he claims that the statements he made, on their face, are not true threats.

7

to have Victim-1 removed from his position as a State's Attorney by filing misconduct complaints. *See* Ex. H ("I'm going to make sure you're not a State's Attorney anymore. I am filing a complaint against you again."); *see also Dennis*, 132 F.4th at 234 (threats to cause professional embarrassment not physically threatening).

The entirety of the messages demonstrate that the application of these statutes to Mr. Hoyte's conduct violates his First Amendment right to free speech because he did not communicate a true threat. First, Mr. Hoyte's statement that Victim-1 had "made an attempt on [Mr. Hoyte's] life," Ex. F., demonstrates that the word "life" did not just refer to being alive or deceased as there is no allegation that Victim-1 "made an attempt" on Mr. Hoyte's life by attempting to murder Mr. Hoyte. This context demonstrates that Mr. Hoyte was not stating that he would literally take Victim-1's life in the message left on July 29, 2024, Ex. B, instead he was stating that he would screw it up by taking Victim-1's career. *See* Ex. F ("You made an attempt on my life as I see it, so I'm going to return the favor to you. I'm chasing your job."). Second, rather than making threats of physical harm, Mr. Hoyte repeatedly referenced having Mr. Victim-1 removed from his position. *See* Ex. F ("I'm chasing your job."); Ex. G "("[M]y goal in life, my mission in life is to make sure the two of you don't practice law ever again."): Ex. H ("I'm going to make sure you're not a State's attorney anymore. I am filing a complaint against you again."); Ex. I ("I am going to get your career."); Ex. J (informing Victim-1 he would be out of his job and should start a landscaping business); Ex. L ("I'm aiming at getting you fired."). Third, Mr. Hoyte's statements that Victim-1 would be raking leaves in a couple years or starting a landscaping service demonstrate that Mr. Hoyte was threatening Victim-1's career, not his physical well being, as presumably Victim-1 would not be able to work if he were deceased. *See* Ex. J. This conclusion is further buttressed by the voicemail left on September 27, 2024. In that

voicemail, Mr. Hoyte states that Victim-1's conduct is not dissimilar from a "corrupt pig." Ex. L. He then states that corrupt pigs get "fired, killed, or they end up in jail." *Id.* He then states what is going to happen to Victim-1. *Id.* He does not state that he is going to kill him or physically harm him, instead he discusses Victim-1 being fired and charged with criminal harassment. *See id.* (I'm aiming to get you fired, first of all. And then hopefully, you get some criminal harassment charges for what you've been doing to me for the past three years. And hopefully, you'll find your way to a f*****n' jail cell as well.").

**2.** **The Statute at Issue in Count One, 18 U.S.C. § 2261A(2)(B), is Unconstitutional as Applied to Mr. Hoyte, In Violation of His First Amendment Rights, Because He Did Not Engage in A Pattern of True Threats.**

Stalking, as it is charged in this case, prohibits a person from (1) "with the intent to . . . harass, or intimidate" (2) use "any . . . electronic communication system of interstate commerce . . . to engage in a course of conduct," that (3) "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress" to the victim, an immediate family member, or spouse or an intimate partner. 18 U.S.C. § 2261A(2)(B). A course of conduct is defined as "a pattern of conduct composed of *2 or more acts*, evidencing a continuity of purpose." 18 U.S.C. § 2266(2) (emphasis added). Accordingly, to violate the statute there must be more than one criminal act. Applied here, that means there must be more than one voicemail containing a true threat.

To comport with the First Amendment, "the course of conduct causing substantial distress [must] implicate[] speech not protected by the First Amendment, such as true threats." *Dennis*, 123 F.4th at 229. In other words, to criminalize the conduct, there must be at least two true threats. If a defendant made one true threat, and the remainder of his/her communications were troubling, annoying, or harassing in the broader sense of the words, but did not threaten

9

physical harm, then the application of the statute to his conduct violates the First Amendment. *See United States v. Yung*, 37 F.4th 70, 78 (3rd Cir. 2022) ("First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid."); *see also United States v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022) (construing "harass" to mean "vex, trouble, or annoy continually or chronically" would "infringe on rights protected by the First Amendment") (internal citation omitted).

The application of 18 U.S.C. § 2261A(2)(B) to Mr. Hoyte is unconstitutional because he did not engage in "2 or more acts" that comprised true threats. *See* 18 U.S.C. § 2266(2). As discussed above, the only message that could potentially be read to convey a threat was left on July 29, 2024. Ex. B. In that message Mr. Hoyte stated, inter alia, "You're gonna f**k with my life, I'm going f****n' take yours . ." Ex. B. For the reasons discussed above, Mr. Hoyte maintains that this was not a true threat based on the context of the other messages. However, to the extent the Court disagrees, the application of 18 U.S.C. § 2261A(2)(B) to Mr. Hoyte is still unconstitutional because there is no other message that contains a reference to physical violence and the context of his messages demonstrates that any ambiguous communication did not implicitly convey a true threat. *See Dennis*, 132 F.4th at 203; *see* Exs. A, C-N. Therefore, its application in this case amounts to an unconstitutional restriction on Mr. Hoyte's freedom of speech.

3. **The Indictment Must Be Dismissed Because Both Counts Fail to Allege an Essential Element of Each Charged Crime.**

An indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments. *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (citing *Russell v. United States*, 369 U.S. 749, 760-61 (1962)). The Fifth Amendment guarantees that "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a

presentment or indictment of a Grand Jury." If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury. *Pirro*, 212 F.3d at 92. Nor can the defendant be assured that the grand jury acted properly in indicting him. *Id.* Moreover, "[t]he Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Id.* (citing *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

The Sixth Amendment guaranty of the defendant's right "to be informed of the nature and cause of the accusation" against him is also offended by an indictment that does not state the essential elements of the crime. *Pirro*, 212 F.3d at 92 (citing *Russell*, 369 U.S. at 761).

Because of the Constitutional importance of an indictment, the failure to plead a charge correctly results in dismissal of the charge. For instance, in *United States v. Fistel*, 460 F.2d 157, 160-61 (2d Cir. 1972), the government charged the defendant with a robbery under 18 U.S.C. § 2113(b). However, while it charged the defendantw with "unlawfully, wilfully and knowingly" possessing bills "which had been unlawfully taken and carried away [from a bank]," it failed to charge him with intending to "steal or purloin" as is required under a subsection (b) charge. The Second Circuit held:

> The indictment was not only 'inartfully' drawn; it was clearly defective in omitting the essential element of 'intent to steal or purloin' required to state an offense under § 2113(b). Had appellant filed a motion to dismiss the indictment prior to trial, dismissal would have been required.

*Id.*

In short, an indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendment and must be dismissed upon motion of the defendant.

11

A. *Count One Must Be Dismissed Because It Fails to Allege An Essential Element of 18 U.S.C. § 2261A(2)(B)—That Mr. Hoyte Intended to Communicate a True Threat.*

Count One must be dismissed because it fails to allege that Mr. Hoyte intended to communicate a true threat. An essential element of stalking, 18 U.S.C. § 2261A(2)(B), is that the defendant intended to communicate a true threat. *Dennis*, 132 F.4th at 230. The statute states, as relevant here, that the defendant must act "with the intent to . . . harass [or] intimidate." 18 U.S.C. § 2261A(2)(B). However, as discussed above, "construing that statute's intent" requirement "too broadly" would infringe on protected First Amendment rights because the First Amendment protects a lot of speech that is meant "to vex, trouble, or annoy continually or chronically." *Dennis*, 132 F.4th at 228 (internal citation omitted). Accordingly, to avoid violating the First Amendment, the defendant must have "intended to communicate [a] true threat." *Id.* (noting that true threat must be imported into § 2261A(2)(B)'s intent requirement to avoid First Amendment concern).

Count One of the Indictment must be dismissed because it fails to allege that Mr. Hoyte "intended to communicate [a] true threat." *Dennis*, 123 F.4th at 229. Count One alleges that Mr. Hoyte acted "with the intent to harass and intimidate another person." ECF No. 8 at 1. That is insufficient for the reasons just mentioned. It criminalizes free speech because lots of harassing and intimidating speech is protected free speech. *Dennis*, 123 F.4th at 230. The indictment is deficient and must be dismissed because it fails to allege an essential element.

B. *Count Two Must Be Dismissed Because It Fails to Allege an Essential Element of 18 U.S.C. § 875(c)—That Mr. Hoyte Recklessly Communicated a True Threat.*

Count Two must be dismissed because it fails to allege Mr. Hoyte's *mens rea* as to the threats. 18 U.S.C. § 875(c) prohibits transmitting in interstate commerce a communication

12

containing any threat to injure another person. Although it does not contain an express mens rea requirement like 18 U.S.C. § 2261A(2)(B), in *Counterman* the Supreme Court held that recklessness is the minimum *mens rea* element required by the First Amendment in a threats case. *Counterman v. Colorado*, 600 U.S. at 78-79; *see also Garnes*, 102 F.4th at 636 (*Counterman* "concluded that the need to protect the freedom of speech guaranteed b the First Amendment affects both the act and intent elements of threat crimes)." In this context, recklessness "means that a speaker is aware that others could regard his statements as threatening and delivers them anyway." *Counterman*, 600 U.S. at 79. In other words, the Government "must show both that the statements he made would, objectively, convey to the listener that the threatening language represented a genuine threat, and that in making his statements, he 'consciously disregarded a substantial risk that his communications would be viewed as threatening violence.'" *Garnes*, 102 F.4th at 637 (citing *Counterman*, 600 U.S. at 79).

Count Two must be dismissed because it fails to allege Mr. Hoyte's mens rea as to the threat. It fails to allege that Mr. Hoyte acted recklessly by "consciously disregard[ing] a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 79. Count Two alleges that Mr. Hoyte "knowingly and willfully transmitted in interstate commerce a communication containing a threat to injure Victim-1." ECF No. 8 at 2. The indictment alleges that Mr. Hoyte knew that he transmitted a communication and that a reasonable person would interpret the communication as a threat, but it does not allege Mr. Hoyte's *mens rea* as to the threatening nature of the communication. *See United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015) (affirming dismissal of similarly worded indictment because it failed to allege *mens rea*). Count Two must be dismissed because it fails to allege an essential element of the charge.

13

WHEREFORE, counsel respectfully requests for the reasons stated that the Court hold a hearing on this motion and grant this motion to dismiss the indictment.

Dated: September 25, 2025

By:    /s/ Emily C. Kenyon
      Emily C. Kenyon
      Assistant Federal Public Defender
      Office of the Federal Public Defender
      District of Vermont
      95 Pine Street, Suite 150
      Burlington, Vermont 05401
      (802) 862-6990
      Counsel for Todd Hoyte